## MARY M. B. SMITH v. C. W. GARRETT.

A covenant not to sue may be plead in suspension of action by the debtor whenever broken, and its observance will be enforced, and damages for breach may be recovered

An agreement not to sue, after the purchaser, after cultivation, shall fail to make "crops," is not agreement not to sue if she shall fail to make "good crops," there being no averment that there was fraud or mistake in the writing.

A party cannot set up a contemporaneous parol agreement, which varies, in an important particular, the written contract on which she relies, and which she in no respect impeaches.

APPEAL from Lavaca. The case was tried before Hon. FIELDING JONES, one of the district judges.

On the 30th of November, 1858, Mary M. B. Smith purchased of C. W. Garrett seven hundred and seventy-one acres of land, in Lavaca county, for which she gave her three notes, due the 1st day of January, 1860, 1861, and 1862, each for $2,333 33⅓, with 10 per cent. interest after maturity. Garrett gave the usual bond to make title after the payment of the notes. But Mary, looking to the possibility of bad cotton crops, required Garrett to indorse upon the bond the following obligation:

"The above bound C. W. Garrett binds himself, provided the said Mary M. B. Smith cultivates said land and fails to make crops, not to sue on the said notes, provided the said M. M. B. Smith pays up the interest due on said notes as they severally fall due; but if the said M. M. B. Smith fails to cultivate said land, or pay the amount of the said notes, then the said Garrett can sue on the same.                                    C. W. GARRETT."

The first note having fallen due, Garrett, on the 27th of February, 1860, sued upon the same, and prayed for judgment, and for the sale of the land, and to enforce the vendor's lien. The defendant plead the facts, and further states, "that she purchased said land from said Garrett under the specifications and promises, that, in the event she failed to make good crops on said land, after cultivating the same, she was only to pay interest on said notes as they became due; that he would not sue her on said notes; that she was induced to purchase by that promise, Garrett knowing that she had no means of payment excepting from her crops; that she cultivated the place well in 1859, and ought to have made two hundred bales of cotton, but, owing to he bad season, her crop yielded less than $2,000, which

XXIX.—4.

was mainly consumed by her expenses; that she had tendered Garrett the interest, according to the stipulation, which interest she brought into court; and that the real understanding of the contract was, that if, after cultivating the place, she should fail to make " good crops," she should not be sued, provided she paid the interest. To this answer the plaintiff excepted, because his contract was without consideration; because one of the conditions of it was the non-payment of the notes; because there was no sufficient averment that 1859 was a bad year for crops; and because she had not plead how many acres of cotton she cultivated, &c.

The defendant amended, and averred that she planted one hundred and eighty acres of cotton and two hundred and fifty in corn, which ought to have yielded two hundred bales of cotton and three thousand nine hundred bushels of corn; but that, after good cultivation, she only made seventy bales of cotton and one thousand two hundred bushels of corn; "that she used every exertion to make and save the crop, but from drouth and the worms she failed to make a crop, and that it was no act or negligence of hers, but from causes which she could not prevent."

She again plead, "that the said plaintiff, when he made the agreement attached to the said bond, expressly stated, that if this defendant failed to make good crops on the plantation, he would require nothing but the interest on said notes; and if she failed to make a good crop of the year 1859, he would not demand or ask her for the money on the first note until 1860; and, if she failed to make a good crop for the year 1860, all he would ask would be the interest on said notes, and the principal might remain unpaid until she could make a good crop," &c.

No exception was filed to this amendment, but the court sustained exceptions to the defendant's original and amended answers, the jury was withdrawn, and the de-

fendant, being without defense, judgment was rendered for the plaintiff for the amount of the note; from which the defendant appealed.

*R. M. Tevis,* for the appellant.—The first error assigned is, that the court erred in sustaining plaintiff's exceptions to defendant's answer and amended answer. It is clear that there was an agreement between the parties relative to the purchase of the land, for which the note in question was given and signed by said Mary M. B. Smith, and having been made a part of the defendant's answer, the plaintiff was bound by it, and no denial would be effectual only by plea of *non est factum,* which was not done.

The defendant also plead general denial. The exceptions were sustained to the whole of the answer, which was erroneous. (Hunt v. Blackburn, 20 Tex., 601.)

There is an ambiguity about the agreement which was entitled to be explained by proof.

In the agreement said C. W. Garrett binds himself, provided Mary M. B. Smith cultivates said land and fails to make a crop, not to sue on the note, provided she pays the interest. Now, it is not stated whether the word "crops" means good crops, average crops, or bad crops. It must have been intended to have some signification, and being susceptible of explanation by parol evidence, we must look to the answer to find what was the intention of the parties at the time of its execution.

The defendant alleges that it was upon the representation of said Garrett that she purchased the land, for he well knew that she relied upon making the payments out of the crops raised on said land, and expressly told her that if she failed to make good crops, after cultivating the land, he would only demand the interest. Now, if such was the fact, which was admitted for the purpose of demurrer, then we conceive the plea to have been a good

one, and the exceptions should not have been sustained. (Burk v. Stewy, 21 Tex., 418.)

The defendant set up the fact that she had cultivated the land well, and had failed to make a crop, and also fraud practiced by said Garrett in selling her said land, and many other facts relative to said cause, and should have been sustained; for if all the allegations set forth in defendant's answer were proved to be true, it would most certainly defeat plaintiff's claim. There being error in sustaining exceptions to defendant's answer, the other action of the court was erroneous, as by the first ruling the defendant was debarred from offering her proof to refute the claim of plaintiff.

No brief for appellee has been furnished to the *Reporter.*

COKE, J.—The exceptions of the appellee to the answer of the appellant were properly sustained by the court below.

The writing indorsed on the title bond is a promise or covenant by the appellee, Garrett, on the happening of a certain named contingency, not to enforce by suit the payment of the notes given for the land. In the absence of any evidence of the date of the execution of this writing, it not being dated, it is presumed to have been cotemporaneous with that of the bond on which it is indorsed, and a part of the contract of sale. A covenant not to sue may be plead in suspension of the action by the debtor whenever broken, and its observance will be enforced, and damages for the breach may be recovered. (Blair v. Reed, 20 Tex., 314.)

There is no breach of the covenant in this case shown in appellant's answer. The covenant, together with the title bond on which it is indorsed, was filed as part of the answer. There is no allegation of fraud or mistake in the

draught or wording of this writing. On the contrary, it is set up and relied on by the appellant as embodying the contract between herself and the appellee, in reference to its subject-matter. By this contract, the appellee binds himself, upon failure of the appellant, after proper cultivation, "to make crops," &c., not to sue upon the notes. The answer alleges a parol agreement, that, upon failure of appellant to make "good crops," &c., she should be exempt from suit, &c., and charges that she did fail to make "a good crop;" thus attempting to set up a cotemporaneous parol agreement which varies, in an important particular, the written contract on which she relies, and which he in no respect impeaches.

This, upon elementary principles, is clearly inadmissible. (Hunt v. White, 24 Tex., 643; 1 Greenl. on Ev., § 275.)

The covenant not to sue, as varied by the parol agreement set up, is alleged by the answer to be broken; but no breach is alleged of the agreement, as shown by the writing, which, in the absence of a proper impeachment, fixes the rights and liabilities of the parties. There is no error in the judgment, and it is

AFFIRMED.